AO (Rev. 5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>vs.<br><br>JUAN GONZOLO MORA<br>  a/k/a Juan Mora-Munoz<br>ANDRES ANTONIO TOBON<br>LUIS FERNANDO GIRALDO | **CRIMINAL COMPLAINT**<br><br>CASE NUMBER: 5-2003-01, 02 and 03 |

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about and between December 15, 2004 and December 18, 2004, in Orange County, Florida, in the Middle District of Florida, the defendants did conspire to possess and did possess with intent to distribute five kilograms or more of cocaine, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A)(ii). I further state that I am a Special Agent with the Drug Enforcement Administration, and that this Complaint is based on the following facts:

**SEE ATTACHED AFFIDAVIT**

Continued on the attached sheet and made a part hereof: ☒ Yes  ☐ No

_____
Signature of Complainant
Karl Weiss
Special Agent, DEA

Sworn to before me and subscribed in my presence,

January 19, 2005      at      Orlando, Florida

DAVID A. BAKER
United States Magistrate Judge
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

STATE OF FLORIDA                              Case No. 05-2003-01, 02 and 03

COUNTY OF Orange

## AFFIDAVIT

I, Karl Weiss, being duly sworn and deposed, state that I am a Special Agent (SA) with the United States Drug Enforcement Administration (DEA) assigned to the Orlando District Office. I have been a Special Agent since July 2000. I have completed DEA basic training at the DEA Academy in Quantico, Virginia, and numerous other law enforcement training courses while employed with DEA, including Drug Interdiction, Civil and Criminal Asset Forfeiture, and Exploitation of Telecommunication Devices (Wiretaps). During my employment with the DEA, I have received specialized training and have gained experience in the investigation of criminal drug trafficking, including cocaine, methamphetamine and marihuana trafficking. I have been trained in the methods that drug traffickers use to distribute controlled substances and am familiar with the means by which drug traffickers manage and conceal the proceeds of their drug trafficking activities. I have participated in seizures of controlled substances and the arrests of drug traffickers. I have debriefed cooperating individuals and have conducted other means of investigation. Prior to my employment with DEA, I was a sworn Deputy Sheriff with the Seminole County Sheriff's Office and was assigned to the City/County Investigative Bureau (CCIB) for approximately 6 ½ years. CCIB is a multi-agency task force responsible for the investigation and enforcement of narcotic, organized crime, and vice-related criminal activities. During my tenure with CCIB, I received training, including the Florida Police Standards Training Program, required by

the State of Florida; Basic and Advanced Narcotic Investigation and Identification; Advanced Training in Undercover Drug Operations; Surveillance Techniques; Indoor Marihuana Cultivation; Designer/Club Drugs and Raves; Confidential Sources; Search Warrants; Instructor Techniques; Wire, Oral and Electronic Intercepts (Wire Taps); Tactical Drug Operations; Criminal Street Gangs; and Diversion/Pharmaceutical Investigation. In addition, I was a Firearms Instructor and an Adjunct Instructor with the Seminole Community College, Valencia Community College, and the International Police and Training Management (IPTM) Institute, in courses, including Surveillance Techniques and Narcotic Identification and Investigation, as well as a member of the Florida Narcotic Officer's Association. I also have a Bachelor's Degree in Criminal Justice from the University of Central Florida (UCF).

1. This affidavit is based upon knowledge that I have acquired during an investigation of drug trafficking criminal activities committed by persons in the Middle District of Florida. This affidavit is based upon my personal knowledge, training and experience as a law enforcement officer, information that I have received from other law enforcement officers and agents, and information received from other investigative means, including surveillance and record searches. Because this affidavit is being submitted for the limited purpose of supporting a criminal complaint and obtaining an arrest warrant, I have not included in this affidavit all of the information that I have learned about this investigation.

## HISTORY OF INVESTIGATION

2.      On December 15, 2004, your affiant was contacted by an established DEA Confidential Source (CS1), who stated that he/she had information regarding an organization responsible for the distribution of cocaine in the Middle and Southern Districts of Florida. CS1 has proven reliable in the past, and has been involved in cases with your affiant which resulted in the arrests of two subjects and the seizure of controlled substances. CS1 has also worked with other DEA Special Agents known to your affiant and has been involved in numerous investigations which have resulted in the arrests of subjects and seizure of controlled substances.

3.      According to CS1, he/she and another reliable documented confidential source (CS2) working together were contacted on this date by a subject known to them as "Tono" (later positively identified as Andres TOBON), who told the CSs that he had five (5) kilograms of cocaine for sale, and was working for an organization that was expecting a delivery of multiple kilograms of cocaine and 15-20 kilograms of heroin within a few days. From the date of December 15th to December 18th, 2004, TOBON and the CSs had a series of telephone conversations in which TOBON repeatedly told the CSs about this delivery and asked how many kilograms the CSs could distribute for him. During these telephone calls, TOBON and the CSs also negotiated for the sale of the five kilograms of cocaine (at $18,000 per kilogram) that TOBON possessed at that time.

4.      On December 18th, 2004, at the direction of your affiant, the CSs telephoned TOBON and arranged to meet at a "Denny's" restaurant parking lot, located

3

on State Road 436, Orlando, Florida, for the purpose of finalizing the five kilogram cocaine transaction. Prior to the meeting, I searched the CSs for contraband and found none. I also equipped the CSs with audio recording/transmission devices. I and other DEA Special Agents conducted surveillance in the area of the above-described "Denny's" restaurant, and we observed TOBON in the company of four other subjects (later identified as Juan MORA, Juan GONZALEZ, Nelson ESPITIA and Victor SALAZAR), who were in a red Toyota RAV-4 vehicle in the parking lot of the "Denny's". The CSs then arrived in the parking lot and TOBON walked away from the other subjects and met with the CSs as planned. TOBON and the CSs engaged in conversation regarding the five kilograms of cocaine, during which time TOBON told the CSs that the subjects in the Toyota RAV-4 vehicle were "with him" and part of the transaction. TOBON then told the CSs that the cocaine was being delivered to the area by an associate (later identified as Luis GIRALDO), and he arranged to meet with the CSs at a nearby hotel to complete the transaction. The CSs and TOBON then drove to a Holiday Inn located across the street from the "Denny's" restaurant and waited for the arrival of GIRALDO and the cocaine. Approximately thirty minutes later, GIRALDO arrived at the hotel driving a rental car, met with TOBON and the CSs in the parking lot, and retrieved a bag from the trunk of the rental car. GIRALDO, TOBON and the two CSs then entered the hotel, went to room 733, at which time GIRALDO and TOBON opened the bag, showing the CSs five kilograms of suspected cocaine. GIRALDO and TOBON and the CSs discussed the cocaine transaction, after which the CSs told GIRALDO and TOBON that they would leave to go get the purchase money for the

cocaine. The CSs then left the hotel, met with DEA agents and were searched for contraband with none located. I and other DEA agents went to room 733, placed TOBON and GIRALDO under arrest and seized the suspected cocaine. The suspected cocaine was later field tested by your affiant and proved positive for the presence of cocaine, and it is presently awaiting laboratory testing by the DEA South East Regional Laboratory.

5. Following the arrest of TOBON and GIRALDO, they agreed to cooperate with the investigation. TOBON and GIRALDO identified Juan MORA as their source of supply for the cocaine, and stated that MORA was in the company of three other subjects in a Toyota RAV-4 vehicle who "owned" the five kilograms of cocaine as well as the expected shipment of additional cocaine and heroin, and were awaiting payment for the five kilograms of cocaine. TOBON then placed a telephone call to MORA, at the direction of DEA, advised MORA that he had the money from the sale of the five kilograms of cocaine, and arranged to meet MORA back at the "Denny's" restaurant. A short time later, surveillance agents observed the Toyota RAV-4 vehicle containing MORA, ESPITIA, GONZALEZ and SALAZAR arrive at the "Denny's parking lot, where they were placed in custody pending investigation. After receiving *Miranda* warnings, MORA provided statements that he and ESPITIA, GONZALEZ and SALAZAR were in Orlando to pick up money from GIRALDO for "something illegal," but he would not specify what the money was for. A check of MORA's cellular telephone revealed telephone calls between him and TOBON, as reflected above. MORA, ESPITIA,

GONZALEZ and SALAZAR were then placed under arrest on State of Florida charges for trafficking in cocaine.

6.   Based upon the foregoing, I believe that there is probable cause to believe that MORA, TOBON and GIRALDO have violated Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii) (possession with intent to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine) and 846 and 841(b)(1)(A)(ii) (conspiracy to distribute and to possess with intent to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine).

7.   This concludes my affidavit.

Karl Weiss, Special Agent
Drug Enforcement Administration

Subscribed and sworn before me
this 19th day of January 2005.

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

N:\_Criminal Cases\t\TOBON, ANDRES_2005R_EJB\Affidavit.cocaine.wpd

6